IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BERT MARTIN**                                                                                              **PLAINTIFF**

**v.**                                                                                     **CIVIL ACTION NO. 1:24-cv-124-TBM-RPM**

**CITY OF POPLARVILLE, MS**                                                                           **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Plaintiff Bert Martin, a part-time police officer for the city of Poplarville, Mississippi, filed a lawsuit in state court against Alderwoman Anne Smith and resident Jeremiah Johnson for defamation. Around six months later, Poplarville's Board of Aldermen declined to appoint Martin to a new part-time patrol captain position despite the police chief's recommendation. Martin now brings this First Amendment retaliation claim against Poplarville here in federal court, arguing that the Board of Aldermen's decision was in retaliation for his speech via the state court defamation lawsuit.

This case is controlled by *Gibson v. Kilpatrick*, 838 F.3d 476 (5th Cir. 2016). Under *Gibson*'s three-prong standard, Martin's state court defamation lawsuit is not protected by the First Amendment because it was not on a matter of public concern. The *content* of his lawsuit was predominantly personal; his allegations against Smith and Johnson aired personal grievances rather than information pertinent to the public, and his requested relief was specific to him and his employment. Further, his lawsuit's *form* did not implicate the public fisc because he sued Smith in her individual capacity. Finally, viewed in *context*, Martin filed the lawsuit as a response to back-and-forth remarks that drew little or no attention from Poplarville's residents.

Weighing these three factors together, Martin's defamation lawsuit did not concern the Poplarville public. It arose largely in the employment context. It revolved around a small, but

passionate, group of people. And it was ultimately dismissed by the state court because Martin never specified the alleged insults that Alderwoman Smith and Johnson ever levied against him. Martin's suit, at its core, concerned a typical small-town feud. Martin recognizes it was personal and "about my integrity." The state court defamation suit is not protected speech. Accordingly, the Court grants Poplarville's motion for summary judgment.

## I. BACKGROUND

In addition to his part-time police duties, Martin served arrest warrants on a voluntary basis. [25-1], pps. 12, 14. Sometime in 2023, an arrest warrant was issued for Jeremiah Johnson. [26], p. 3; [28], p. 3. According to Martin, Johnson was friends with Alderwoman Smith and the Poplarville police department's then-Captain Kimble Farmer. [25-1], p. 14. Captain Farmer allegedly told Martin not to serve the warrant "or else." *Id*. But Martin did anyway, leading to a dispute between himself and Johnson. [26], p. 2; [28], p. 3.

On September 14, 2023, Poplarville's Board of Aldermen approved the city's fiscal year 2023-24 budget. [25-8], p. 1. The budget allocated money for a new part-time patrol captain position. [26], p. 3; [28], pps. 3–4. Five days later, Johnson complained to the Board of Aldermen about Martin's conduct during their interaction. [26], pps. 2–3; [25-1], p. 16; [25-3]. And Martin contested Johnson's claims by filing a formal response. *See* [25-4]. Martin also claims that Johnson regularly visited local businesses to "accuse Martin of acting unlawfully." [25-2], p. 4. And, allegedly conspiring with Johnson, Alderwoman Smith echoed this sentiment to at least one media outlet as well. *Id.* at p. 2.

In November 2023, Martin sued Smith and Johnson for defamation in state court. [26], p.

3; [28], p. 3. The allegations lacked specifics, and the case was eventually dismissed.[1] Nonetheless, according to Martin's state court complaint, Smith and Johnson had provided unknown statements that "caused the media to refer to Martin a[s] a 'Crypto Nazi' and accus[e] Martin of acting like 'The Punisher,'" by "arresting people on false charges." [25-2], p. 3. As a result, Martin claimed, "at least one person" was "fearful of the mere presence of Martin," and Poplarville "was forced to pull Martin from the streets." *Id.* at p. 4.

In March 2024, while the defamation lawsuit was pending and before it was dismissed, Poplarville's Police Chief Chad Dorn recommended Martin to fill the newly created part-time patrol captain position. [26], p. 3; [28], p. 3. Smith recused herself from the vote and left the building because of Martin's lawsuit against her, [26], p. 4; [28], p. 4, and another alderman was absent, [26], p. 4. The three remaining aldermen met in executive session to consider the vote. *Id.*; [28], p. 4. But, upon exiting the session, none made a motion to consider Police Chief Dorn's recommendation. [26], p. 4; [28], p. 4. This meant that it failed without a vote. [26], p. 4; [28], p. 4.

Martin then brought this First Amendment retaliation claim against Poplarville. He argues that Poplarville's Board of Aldermen rejected Police Chief Dorn's proposal for him to fill the new part-time position in retaliation for his defamation lawsuit against Smith and Johnson. [1-1], p. 3. Poplarville now moves for summary judgment. [26].

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

---

[1] In August 2024, a Mississippi circuit court granted Smith and Johnson's motion to dismiss because Martin's complaint did not "set forth the specific defamatory statements or words purportedly made by" either person. [25-2], p. 7. Martin appealed, and the Mississippi Court of Appeals recently affirmed. *Martin v. Smith*, No. 2024-CA-01027-COA, 2025 WL 3456662, at *3 (Miss. Ct. App. Dec. 2, 2025).

3

to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "fact is material if it might affect the outcome of the suit under the governing law." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 (5th Cir. 2020) (citation omitted). And a "dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* But a genuine dispute of an otherwise material fact does not preclude summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In that situation, the "failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial" and, consequently, "the moving party 'is entitled to judgment as a matter of law.'" *Id.* at 322–23. In sum, "the court must conclude—without resolving any fact disputes—that the movant 'must prevail as a matter of law.'" 11 Moore's Federal Practice § 56.21 (2025) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"'[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence,' which 'shift[s] to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" *Dewolff v. Pethick*, 133 F.4th 448, 452 (5th Cir. 2025) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (per curiam)). In making its assessment, the court should view "all facts and evidence in the light most favorable to the non-moving party." *Clark*, 952 F.3d at 578–79.

### III. ANALYSIS

"The First Amendment protects freedom of speech and 'the right of the people . . . to petition the government for redress.'" *Gibson*, 838 F.3d at 481 (quoting U.S. Const. amend. I).

Martin seeks redress under the First Amendment's Petition Clause. [28], pps. 8–9. But as both parties acknowledged at this motion's hearing, the analysis is the same whether a retaliation claim is brought under the Speech Clause or the Petition Clause. *See id*. "A plaintiff must show that '(1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) his speech motivated the employer's adverse employment action.'" *Id*. (quoting *Charles v. Grief*, 522 F.3d 508, 510 n.2 (5th Cir. 2008)).

The parties devote much of their briefs to the fourth element. There could be a genuine dispute of material fact over whether Martin's speech—his defamation lawsuit—motivated the Board of Aldermen's decision not to consider Dorn's recommendation. Even so, the Court need not reach that element; Poplarville is entitled to judgment as a matter of law because Martin's lawsuit was not on a matter of public concern. *See Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992) (noting where "summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law . . . all other contested issues of fact are rendered immaterial").

"To be speaking on a matter of public concern, the employee must speak in his capacity as [a] citizen, not employee." *Gibson,* 838 F.3d at 482.[2] "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id*. (quoting *Lane v. Franks*, 573 U.S. 228, 241, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014)). But courts "must be careful not to conclude that speech is a matter

---

[2] Poplarville concedes that Martin spoke as a citizen rather than as an employee. The Court therefore does not analyze this requirement.

of public concern merely because it involves public employees" because "'at some level of generality almost all speech of state employees is of public concern.'" *Id*. at 485 (quoting *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993)). "Public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id*. at 482 (quoting *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) (citation modified)). The Court weighs form and context "more heavily." *Id*. at 482, 487 (quoting *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999) (noting the public concern inquiry is one of law, not fact)).

  The Fifth Circuit's holding in *Gibson* is instructive and controlling on each factor. 838 F.3d 476. There, the plaintiff, the city's police chief, reported the mayor's misappropriation of city funds to state and federal authorities, sparking an official investigation. *Id*. at 480. In response, the mayor filed written reprimands in the plaintiff's personnel file. *Id*. The plaintiff then sued the city's mayor, in his individual capacity, for retaliation under the First Amendment. *Id*. The city's Board of Aldermen ultimately fired the plaintiff. *Id*. He amended his lawsuit to include the city, arguing that the board's decision to fire him for suing the mayor also constituted a First Amendment retaliation claim. *Id*. The district court disagreed, and the Fifth Circuit affirmed. *Id*. at 487. Judge Smith, writing for the unanimous panel, held that all three factors supported the district court's finding that the plaintiff's lawsuit against the mayor was a matter of private concern. *Id*.

  This Court reaches the same conclusion on Martin's underlying state court defamation lawsuit. In its motion for summary judgment, Poplarville argues that all three factors suggest that Martin's lawsuit was a matter of personal interest, not of public concern. Without persuasive countervailing arguments or contradictory evidence, the undisputed record, analyzed in light of *Gibson*, demonstrates that all three factors justify granting summary judgment.

### A. Content

"The content of speech is more likely to relate to matters of public concern when 'releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance.'" *Lumpkin v. Aransas County, Tex.*, 712 F. App'x 350, 356 (5th Cir. 2017) (quoting *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005)). Conversely, "'speech that is related only to a superior's employment decisions' and that affects a plaintiff in a purely personal manner is not a matter' of public concern." *Espinoza v. San Benito Consol. Indep. Sch. Dist.*, 753 F. App'x 216, 224 (5th Cir. 2018) (quoting *Gibson*, 838 F.3d at 484). But even a "mere scintilla of speech regarding a matter of public concern is sufficient to treat the entire communication as mixed speech." *Gibson*, 838 F.3d at 485 (quoting *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 826 (5th Cir. 2007)). In those cases, the court considers whether "personal concerns predominate." *Lumpkin*, 712 F. App'x at 356 (quoting *Gibson*, 838 F.3d at 485).

Applying these rules to speech in the form of a lawsuit, the *Gibson* panel ruled that the plaintiff's speech predominantly involved private concerns. 838 F.3d at 487. Its inquiry focused on two aspects of the lawsuit: the allegations and the requested relief. As the court reasoned, the plaintiff's mere inclusion of a First Amendment claim did "not transform it into a matter of public concern." *Id.* at 483–84 (adopting the Second and Third Circuits' views). But it did acknowledge that "how the mayor treats the police chief" could be a matter of public concern, "given the public's interest in effective city governance." *Id.* at 484, 485 n.9 ("Although Gibson's speech is, strictly speaking, about mayoral misconduct (if anything, he is trying to clear his own name), presumably the public would be similarly interested."). Still, the court considered its content more akin to an "internal grievance" because it was "an employment dispute" at its core. *Id.* at 485. Moreover, the plaintiff only sought personal relief; he did not request "any damages implicating

7

the public," or an injunction "to prevent the mayor from engaging in such future behavior." *Id.* Thus, the court held, even though his lawsuit contained mixed speech, "personal concerns predominate[d]." *Id.*

Likewise, personal concerns predominate in Martin's lawsuit. First, unlike the plaintiff's underlying First Amendment claim in *Gibson*, Martin's speech takes the form of a defamation lawsuit—a deeply personal claim. Indeed, a defamation claim—whether premised on libel or slander—is so personal that it does not survive death "even where the case was filed prior to the death of the plaintiff." *Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 733 (E.D. Mich. 2000) (citing *Catchings v. Hartman,* 174 So. 553, 554 (Miss. 1937)) (analyzing Mississippi law), *aff'd,* 267 F.3d 457 (6th Cir. 2001); *see Mitchell v. Random House, Inc.,* 703 F. Supp. 1250, 1255 (S.D. Miss. 1988) ("[A]s a general rule, a third party has no action for damages suffered by the reason of the defamation of another party. Similarly the defamation of one family member does not normally give rise to a cause of action by another family member."), *aff'd*, 865 F.2d 664 (5th Cir. 1989).

Second, Martin's allegations concern the public only at the margins. On the one hand, through his defamation lawsuit, Martin sought to set the record straight by proving that Smith's and Johnson's alleged statements about his misconduct on the job were false. It may interest the public to know where the blame truly lies. Or, as Martin argues, one could characterize his lawsuit as a partial attempt to defend "law enforcement in general." [28], p. 11. On the other hand, however, a closer look at Martin's state court complaint reveals that its content sought to redress a personal grievance, not inform the populace of government misconduct. Martin's allegations focus on how Johnson's and Smith's conduct impacted him personally. *See generally* [25-2]. The few times the complaint references the public, it does so only to support the idea that Smith and Johnson were attempting to get him fired by creating animosity in the community. *Id.* Indeed, in

8

response to this motion, Martin acknowledges that the underlying lawsuit was premised on personal grievances. In his words, "the suit is based upon defamatory and slanderous statements made by Anne Smith individually against a police officer, and Anne Smith just happens to be an alderwoman." [28], p. 10.

Martin also concedes that he did not sue in state court to expose corrupt government practices or policies. In response to this motion, he noted: "Officer Martin's civil suit against Anne Smith has nothing to do with the operation of government. There will not be any government processes or procedures on trial. No decision-making processes of government will be at the center of the litigation." *Id.* at p. 15. Absent such allegations, supported by summary judgment proof, the only other logical conclusion is that Martin was "attempting to protect his own career and reputation." *Kirby v. Yonkers Sch. Dist.*, 767 F. Supp. 2d 452, 462-63 (S.D.N.Y. 2011) (finding Notice of Claim did not concern the public because alleged defamatory statements—that plaintiff acted in an "unprofessional, insensitive, and unacceptable manner" while teaching seventh graders—to media "related only to [plaintiff] as a school employee"); *Mudrovich v. D.C. Everest Area Sch. Dist.*, No. 04-C-398-C, 2005 WL 775315, at *6 (W.D. Wis. Apr. 6, 2005) (holding underlying defamation claim was personal because its purpose "was to show the falsity of" the allegations).

Third, Martin's requested relief in state court supports this conclusion. He requested "actual, compensatory, special, and punitive damages" in his underlying complaint. [25-2], p. 5. Martin did not suggest then, nor does he suggest now, that these damages were for the benefit of anyone else besides him. And the Court is unwilling to infer a potential public concern from a single conclusory request for punitive damages. *See Ruotolo v. City of New York,* 514 F.3d 184, 190 (2d Cir. 2008) (rejecting argument that punitive damages, sought to deter "future illegal and retaliatory conduct," hinted at broader public purpose; "retaliation against the airing of generally personal

9

grievances" is not protected simply by "the mere fact that one or two of a public employee's comments could be construed broadly to implicate matters of public concern"). Accordingly, these "damages do not implicat[e] the public." *Gibson*, 838 F.3d at 485; *see Storman v. Klein*, 395 F. App'x 790 (2d Cir. 2010) (holding lawsuit did not touch upon a matter of public concern because plaintiff complained "solely of personal damages to his income, retirement benefits, reputation, and physical and emotional well-being").

True, Martin did seek an injunction, unlike the plaintiff in *Gibson*. [25-2], p. 5. But it extended only to him because he was the sole plaintiff. *See id*. ("[T]he [c]ourt should enjoin the Defendants from making or posting any negative or derogatory comments *about Martin*.") (emphasis added). In other words, the injunction's impact, if granted, concerned the public only insofar as Johnson or Smith intended to negatively comment on Martin, not anyone else. In this respect, Martin's requested party-only injunction is a distinction without a difference because it would have had little public implications. *See Ruotolo,* 514 F.3d at 190 (describing injunction to expunge employment records and restore retirement benefits as "almost entirely personal"); *Heusser v. Hale*, 777 F. Supp. 2d 366, 380 (D. Conn. 2011) (describing injunction to relist plaintiff's business on the city's programming as personal in nature). Accordingly, the undisputed evidence shows that Martin's allegations and requested relief were predominantly personal in nature. The content of Martin's speech, therefore, weighs in favor of finding that it was not a matter of public concern.

### B. Form

Recognizing that *Gibson* foreclosed any contrary argument, Martin conceded at this motion's hearing that his speech's form favored Poplarville's position. In *Gibson*, the plaintiff's speech took the form of a private lawsuit against the mayor only in his personal capacity. 838 F.3d

at 486. And "because they do not concern the public fisc, personal-capacity suits are much less likely to be a matter of concern." *Id*. ("[A]lthough it is not alone sufficient . . . a suit brought against a public official in his official capacity, or directly against a public entity, is more easily read as a matter of public concern."). Therefore, the court held, "the form of [the plaintiff's] suit—personal capacity—provides *significant* support for the conclusion that it was not a matter of public concern." *Id*. (emphasis added). Likewise, in the state court case, Martin sued Johson, a private Poplarville resident, and Smith, in her individual capacity. Recovery from either would not implicate the public fisc. And even "[t]hough the speech sought relief from a third party"—here, the state court—"it was not a whistleblower suit alerting the public of misconduct; instead, it sought assistance in redressing personal grievances." *Id*. Therefore, the undisputed form of Martin's speech also weighs in favor of finding that it was not a matter of public concern.

### C. Context

"When speech is made 'within the context of a private employee-employer dispute' that context 'militates against a finding that her speech was public in nature.'" *Lumpkin*, 712 F. App'x at 358 (quoting *Graziosi v. City of Greenville, Miss.*, 775 F.3d 731, 739 (5th Cir. 2015)). Another contextual consideration is whether 'the speech occurred against a backdrop of widespread debate in the community.'" *Espinoza*, 753 F. App'x at 224 (quoting *Gibson*, 838 F.3d at 487).

The *Gibson* court held that the plaintiff's suit was more like a private employee-employer dispute. *See* 838 F.3d at 487. As the court recounted, the mayor opposed the plaintiff's application to be the chief of police. *Id*. After obtaining the position, the plaintiff responded by reporting the mayor's misuse of the gasoline card to state authorities. *Id*. Following the investigation, the mayor began entering reprimands into the plaintiff's personnel file and complaining to the city aldermen about his conduct on the job. *Id*. Considering this context, the court reasoned that the plaintiff's

11

suit was not public in nature because it "was filed in the context of a continuing feud" between himself and the mayor. *Id.*

Likewise, Martin's own testimony shows that he filed his defamation lawsuit as a response to a back-and-forth, small-town feud. The feud began when a warrant was issued for Jeremiah Johnson for stalking a family member. [25-1], p. 14. Then-Captain Farmer instructed Martin not to serve a warrant on Johnson, who was allegedly "best buds" with Farmer and Smith. *Id.* But Martin served the warrant anyway to prevent Farmer from sweeping it "under the rug." *Id.* at p. 15. The feud escalated when, according to Martin, Johnson falsely accused the family member of simple assault in retaliation. *Id.* And after charges were brought, Martin believed that Farmer lied to the district attorney to have the charge "upgraded to a felony." *Id.* Sometime thereafter, Farmer left Poplarville's police force, and Martin posted "[w]hat's done in the dark will one day come to light" and "today is the day the sun is shining brighter than ever." *Id.* at pps. 14–15. In response and allegedly on Farmer's behalf as well, Johnson formally complained to Poplarville's Board of Aldermen about Martin's defiance and Facebook post. *See* [25-3]. Martin contested these claims by filing a formal response. *See* [25-4]. And, as alleged in his defamation lawsuit, Smith and Johnson then began defaming Martin around Poplarville. [25-2].

The Court's factual recount is not to cast aspersions or vindicate a particular party. Rather, it illustrates that this whole personal feud arose largely within the employment context. The parties themselves then brought it into the public discourse. And it culminated in Martin's defamation lawsuit, which boiled down to one thing: "[i]t's about my integrity." [25-1], p. 27 (Martin's deposition). This timeline suggests that Martin filed his suit as a response "in the context of a continuing feud." *Gibson*, 838 F.3d at 487.

Moreover, the record suggests that this dispute was not particularly noteworthy in Poplarville. Martin's underlying state court complaint does mention that Smith's false statements caused a media outlet to refer to him as a "Crypto Nazi" and "The Punisher," leaving "at least one person . . . fearful of the mere presence of Martin." [25-2], pps. 3–4. But Martin has not elaborated on these claims with summary judgment proof. Nor has he provided Johnson's and Smith's alleged defamatory social media posts, which could at least suggest community interaction. *See Espinoza*, 753 F. App'x at 224 (affirming dismissal because officers "presented no evidence of a widespread public debate about the budget crisis or the management of the School District's police force"). In fact, even if Smith and Johnson did publicly defame him, Martin's deposition testimony indicates that their statements had little effect on the community. When asked whether anyone thought he did anything wrong, Martin responded, "[n]o, because everybody knows how the good ole boy system works in the City of Poplarville." [25-1], p. 25. The Court holds that Martin filed his lawsuit primarily in furtherance of an ongoing, personal feud that arose partially because of his employment, not against the backdrop of widespread public debate. And "[b]ecause personal employment disputes are not, by themselves, matters of public concern, the context of [Martin's] speech further strengthens that his suit does not qualify." *Gibson*, 838 F.3d at 487.

In sum, "all three of the factors—content, form, and context—support the conclusion that the suit was a matter of private concern." *Id*. ("Though the content of [the plaintiff's] suit was a mix of private and public concerns, private concerns predominate. Both the form and context of the suit show that it was a matter of private concern."). Therefore, Poplarville is entitled to judgment as a matter of law.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the City of Poplarville's Motion for Summary Judgment [25] is granted.

THIS, the 20th day of February, 2026.

                                        **TAYLOR B. McNEEL**
                                        **UNITED STATES DISTRICT JUDGE**